IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, CHIEF JUDGE

Civil Action No. 04-cv-00285-LTB-BNB

GENESIS INSURANCE COMPANY,

Plaintiff

v.

WAYNE EMMETT MCKILLOP, and
THE UNITED STATES OF AMERICA,

Defendants.

_____

ORDER
_____

Plaintiff Genesis Insurance Company ("Genesis") seeks declaratory judgment to determine whether defendant Wayne McKillop's ("McKillop") negligent actions in starting a forest fire are covered under Genesis' insurance policy with McKillop's employer, the Jefferson County School District ("JCSD".)  Genesis and Defendant United States of America (herein referred to as "Government") seek Summary Judgment on this issue.  For the reasons stated below I GRANT Summary Judgment to the Government and find that the Genesis' Policy with JCSD covers McKillop's potential liability for damages arising from the fire.

**I.  Background**

This case arises out of a May 1996 forest fire in the Pike National Forest near Buffalo Creek in Jefferson County, Colorado.  On or about May 18, 1996 McKillop, a teacher at a Charter School in JCSD organized a field trip for students from his school to property he used under a Term Special Use Permit ("Permit") issued by the United States Forest Service ("Forest

Service"). The fire allegedly started from a campfire built by some of the students. The fire caused damage to private property and to property owned by the Forest Service. A provision of the Permit states that, "The holder shall be liable for any damage suffered by the United States resulting from or related to the use of this permit, including damages to National Forest resources and costs of fire suppression."

The United States is pursuing claims against McKillop for damages caused by the fire. In an earlier stage of this litigation, the 10th Circuit Court of Appeals held that the Government's claims against McKillop were not governed by the statute of limitations provision of the Colorado Governmental Immunity Act ("CGIA"), C.R.S. §§ 24-10-101, *et seq,* because the government's claim arose from McKillop's alleged violation of the Permit and so had an independent basis in federal law. *United States v. King,* 301 F.3d 1270, 1275 (10th Cir. 2002).

Genesis provides insurance coverage to the Jefferson County School District, under an insurance policy ("Policy") consisting of three basic coverage parts: Commercial General Liability ("CGL"), Commercial Automobile and School Board Legal Liability ("SBLL") as well as several endorsements. Genesis seeks declaratory judgment on the issue of whether the Policy covers McKillop's potential liability for damages resulting from the fire, pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P.57. Both Genesis and the Government have filed Motions for Summary Judgment on this issue.

## II.  Summary Judgment Standard

The purpose of a summary judgment motion is to assess whether trial is necessary. *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). I shall grant summary judgment if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no

genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In this case both the Government and Genesis agree that this issue is appropriate for Summary Judgment and may be decided based on the undisputed facts of the case and the language of the Policy. Neither party argues that there is material fact in dispute. The question is which party is entitled to summary judgment.

### III.   Standard for insurance policy construction

In Colorado, insurance policies are interpreted according to the principles of contract law. *Cyprus Amax Minerals Co. v. Lexington Ins. Co.,* 74 P.3d 294, 299 (Colo. 2003). The provisions of a policy should be "considered as a whole" and "not read in isolation." *Worsham Const. Co. Inc. v. Reliance Ins. Co.,* 687 P. 2d 988, 990 (Colo. Ct. App. 1984). The provisions of an insurance policy should "be given their plain and ordinary meaning." *Chacon v. American Family Mutual Ins. Co.,* 788 P.2d 748, 750 (Colo. 1990.) Where an insurance policy provision is "clear and unambiguous, the court should not rewrite it to arrive at a strained construction. *Id.* Where policy language is ambiguous or "reasonably susceptible to different meanings it must be construed against the drafter and in favor of providing coverage to the insured. *Id.* Absent a clear expression of a limitation of coverage, or if a policy term is inconsistent or ambiguous, "the insurance contract must be construed in favor of coverage and against limitations." *Farmers Alliance Mut. Ins. Co. v. Ho,* 68 P.3d 546, 550 (Colo. Ct. App. 2002).

### IV.   Discussion

Genesis offers three basic arguments for excluding McKillop from the terms of the Policy. First, Genesis argues that the holding of *King* necessarily means that the Government may only make claims against McKillop for actions outside the scope of his duties, and thereby

outside of the coverage of the Policy. Second, even if the Government may assert a claim based on McKillop acting within his duties, McKillop is still not covered because the Policy does not cover liability stemming from breach of contract. Third, McKillop's potential liability to the Government is not covered because the Policy does not cover property damage. I address these arguments in turn.

A.   McKillop Acting Outside of the Scope of His Duties

Genesis contends that under *King,* McKillop's liability to the government cannot be for acts within the scope of his duties and can only be for acts that are outside the scope of his duties. Since acts outside of the scope of his duties are not covered by the Policy, the Policy does not cover McKillop for his potential liability to the government.

Genesis asserts correctly that the Policy only provides coverage for those defined as "insureds." "Insureds" include only employees acting "within the scope of their employment" by the school district. [SBLL, p. 8, § II(2)]. Moreover, the Policies cover only "wrongful acts," which are defined as acts "by an insured rendered in the discharge of his/her duties" to the school district. [SBLL p. 18, § VI]. So, if McKillop's liability to the government lies outside of the scope of his duties, then this liability is not for an "insured," not for a "wrongful act" and not covered by the Policy.

Genesis relies on *King* to argue that the Government is barred by law from asserting a claim against McKillop for acting within the scope of his duties during the camping trip. At issue in *King* was whether the CGIA's statute of limitations provision barred the Government's claims against McKillop. The district court had held that the Government's claim was a state tort law claim and barred by the CGIA. *King v. U.S.,* 53 F. Supp. 2d 1056, 1079-1080 (D. Colo.

1999). The 10th Circuit reversed, holding that the Government's claim that McKillop violated his Permit was based on federal law, and not subject to the CGIA. *King*, *supra,* 301 F.3d at 1275-1276.

Genesis interprets this decision to mean that McKillop's liability to the Government stems not from his duties as a teacher acting within the scope of his duties, since any such liability would be covered by CGIA, but only from McKillop's violation of the federal Permit, since this was the basis of McKillop's liability that allowed the government to escape the CGIA. Genesis argues, and the Government does not contest, that the JCSD is not a signatory to the Permit and that the Permit is McKillop's personal permit, not the permit of JCSD. Genesis asserts that *King* therefore requires that McKillop's liability to the government for violating the Permit is his personal liability not attributable to JCSD and not covered by the Policy.

The Government argues that Genesis fundamentally misconstrues the nature of its claim against McKillop. McKillop's liability-creating act, the Government asserts, was not signing the Permit with the Government, but bringing students onto the property as part of a school-sponsored field trip, and the consequences proximately flowing therefrom.  The government contends (and Genesis does not appear to dispute) that the trip was sponsored and approved by JCSD and was part of McKillop's official duties. The Government argues that just because McKillop is liable to the Government because for violation of the Permit does not mean that for the purposes of insurance coverage he was acting outside of his duties when he violated the Permit. The underlying act which caused the property damage at issue here was negligently starting a fire during a camping trip. Since this act occurred while McKillop was acting within his duties, it was covered by the Policy, even though the act also constitutes a violation of

McKillop's Permit. So, the Government argues, McKillop was acting within his official duties when he brought the students to the property, making McKillop an "insured" and making his act a "wrongful act" under the Policy.

Genesis does not dispute the Government's description of the facts, or that McKillop indeed acted within his duties in arranging the camping trip. Genesis instead argues that *King* precludes the Government from making a claim against McKillop on this basis. Such a claim must rely on a tort theory of liability that *King* prohibits the government from asserting. Any liability McKillop may have had to the Government for acts within his duties are now time-barred, and the Government's only claim is a contract claim which by the logic of *King* must be for acts outside of the scope of McKillop's duties and hence not covered by the Policy. .

I do not agree that *King* requires this conclusion. *King* nowhere addresses the issue of whether or not McKillop acted outside of his duties. Nor does *King* apply the logic of its holding to the Genesis Policy.  Rather*, King* held that a contract claim under federal law pre-empted the CGIA under the supremacy clause. *King, supra,* 301 F. 3d at 1276-77. *King* does not state or suggest that the mere fact that McKillop is subject to the longer federal statute of limitations, under a contract theory of liability, means that the acts constituting the violation of his federal Permit were outside of the scope of his duties under the Genesis policy.

Genesis argues that the Government may not assert inconsistent legal theories at different stages of litigation, but in fact Genesis' claim goes well beyond this. Genesis seems to contend that the Government's legal argument at an earlier phase of this case is dispositive of the terms of Genesis' own insurance policy with JCSD.  Genesis cites no authority for this proposition. *King* is silent on how the government's claim against McKillop affects coverage under the

Policy. Nor does the Policy contain any exclusion that addresses the particular legal theory under which a claim is pursued.

Genesis' argument logically means that an otherwise insured individual is excluded from coverage if he is liable to the federal government for a violation of federal law, but not if he is liable to the federal government for a violation of state law.  In effect, Genesis asks me to create a new rule of law to release Genesis from the plain terms of its own Policy. To do so would rewrite the parties' contract in face of the strong legal presumption in favor of coverage absent a clear exclusion or exception.

B.      Policy Coverage for Breach of Contract

Genesis argues that even if McKillop did act within the scope of his duties his actions are still not covered because the Policy explicitly excludes coverage for liability stemming from a breach of contract. (The Government does not dispute that the permit violation is a contract violation.) Genesis asserts that the plain language of the Policy excludes coverage for liability resulting from breaches of contract. Genesis states that the Policy covers property damage caused by an "occurrence," [CGL Page 1, § I(A)(1)(b)(1)], and that under the policy an occurrence is "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." [CGL Page 11, Para 9.]. Genesis argues that "a breach of contract is not generally an accident that constitutes a covered occurrence." *Union Ins. Co. v. Hottenstein,* 83 P.3d 1196, 1201 (Colo. App. Ct. 2003).  In addition, Genesis asserts that the Policy explicitly does not apply to claims "for which the insured is liable by reason of the assumption of liability in a contract or agreement." [SBLL Page 7, ¶ 18.]

The Government argues that even though the Permit is a contract, the Policy has an

7

exception to the contract exclusion for "insured contracts." [JCSD 1708, § I(A)(2)(b)(1)]. The list of insured contracts in the policy includes "licenses." [JCSD 1717, §V(6)(c). A license is a personal privilege to use land not involving a possessory estate or interest that is revocable at will by the landowner. *Booker v. Cherokee Water Dist.,* 651 P.2d 452, 453 (Colo. Ct. App. 1982). The Government contends that the Permit falls under the legal definition of a license, since it is a permit for use revocable at will by the Government. This makes it an insured contract under the Policy and not part of the contract exclusion. In addition, the Government asserts that the language in the Policy excluding coverage for contracts is meant only to apply to "hold harmless" or indemnification agreements. *Weger v. United Fire & Cas. Co.,* 796 P.2d 72, 74 (Colo. Ct. App. 1990).

      I disagree that there is a general rule that a breach of contract is never an "occurrence" for purposes of insurance coverage. While *Union Insurance* does state that "A breach of contract is not generally an accident that constitutes a covered occurrence," *Union Ins., supra,* 83 P.3d at 1201, it also cites with approval cases that rejected establishing "a broad rule that claims sounding in contract are not occurrences," and that instead called for looking to "the kind of claim asserted" to evaluate whether a breach of contract is or is not a covered occurrence. *Id.* at 1202. The specific holding of *Union Insurance* is that a breach of contract claim arising out of poor performance is not a covered occurrence, but *Union Insurance* distinguishes claims where the breach of contract is the result of a an explosion or fire. *Id.* There is no broad controlling rule here, and the specific authority Genesis cites allows for the possibility that a breach of contract resulting from a fire may be an occurrence. It is necessary then to consult the specific language of the Policy to acsertain whether or not McKillop's breach of contract claim is

covered.

Here, the Policy language favors the Government. Genesis does not dispute that McKillop's Permit is a license under the Policy, and does not dispute that a license is within the definition of an insured contract. Hence, this specific contract is an "insured contract" that is not excluded from the Policy. Moreover, Genesis offers no response to the Government's argument that the Policy's language refers to hold harmless or indemnification agreements. There can be no question that McKillop's Permit is not an agreement by McKillop to assume the Government's liability for the Government's own actions. It is therefore not a hold-harmless agreement and is not covered by the Policy language excluding contracts. In light of the strong preference to construe insurance police in favor of coverage, I conclude that the language of the policy does not bar coverage of McKillop's potential liability for violating his Permit.

C.      Policy Coverage for Property Damage

Genesis next argues the Policy does not cover McKillop's liability for the fire because the Policy explicitly excludes from coverage "Claims and/or loss . . . "arising out of property damage." [SBLL Page 3, § B(4)(b).] It appears undisputed that the government's claims against McKillop are for property damage.

The Government responds that this language is inconsistent with language in the CGL allowing for property damage in certain circumstances. The CGL states that the Policy does cover property damages "to which this insurance applies." [CGL Page 1, §I(A)(1)(a)]. The policy states the specific kinds of property damage that are excluded, which includes contracts, and states the exceptions to those exclusions, which includes insured contracts. [CGL Page 1, §I(A)2(b)(1)]. This means, according to the Government, that the Policy does cover property

damage resulting from an insured contract. The SBLL language broadly excluding property damages, the government argues, is intended to dovetail with this CGL language, not to contradict it. The government cites to *Northern Ins. v. Ekstrom,* 784 P.2d 320,324 (Colo. 1989) for the proposition that each insurance policy is written to address specific hazards, and where a hazard is included in one policy but excluded in another they are presumed to "dovetail" in order to avoid overlap. *Id.* Under this interpretation, the SBLL exclusion of property damage does not override the CGL inclusion of certain kinds of property damage, including the property damage at issue here.

It is unclear whether or not these apparently inconsistent coverage provisions are in fact meant to dovetail. However, under Colorado law I construe inconsistent policy provisions in favor of coverage and against the drafter of the policy. *Bohrer v. Church Mut. Ins. Co.,* 965 P.2d 1258, 1262 (Colo. 1998). I therefore resolve the apparent inconsistency between a blanket rejection of coverage for property damage contained in the SBLL and the allowance of coverage for property damage for "insured contracts" in the CGL in favor of coverage for McKillop. The property damage exclusion therefore does not allow Genesis to withhold coverage for McKillop.

Accordingly, IT IS SO ORDERED that:

(1) Plaintiff Genesis' Motion for Summary Judgment is DENIED and Defendant United States of America's Motion for Summary Judgment is GRANTED.

(2) A declaratory judgment shall enter declaring that Plaintiff Genesis is required to indemnify McKillop for claims made against him by Defendant United States of America for damages arising out of the fire described above.

(3)     Defendant is awarded its costs.


DONE and ORDERED, this   23rd   day of August, 2005 at Denver, Colorado.


                                                       s/Lewis T. Babcock  
                                                     United States District Chief Judge